23-1101 Eastern Arkansas Robert Cearley, Jr. v. Bobst Group North America May it please the Court, Chief Judge Colleton, Judge Logan, Judge Cobbs. My name is Clark Tucker. I represent the plaintiff and appellant in this case, the decedent and wrongful death beneficiaries of Vernon Leslie Holland. And the reason we're here today on appeal in front of the Eighth Circuit is because the District Court struggled with whether this is a products case or a construction case. If it's a products case, which it is, then the statute of repose does not apply and the case was filed in a timely manner. But even if this Court were to find that this is a construction case... Well, we don't get that from the text of the statute. That may be the understanding among the Arkansas bar, but that isn't what the statute says. The statute, and if you look at the Arkansas cases that have been briefed, that cite the statute, one is Carter v. Hartenstein, and it describes, quote, a vital distinction between product suppliers on the one hand and the design and construction professionals on the other. I understand that distinction. Yes, sir. The fact that it's been pleaded, a particular case has been pleaded as a products liability case does not all of a sudden say I've gotten around the statute. We'll get into that, Judge. Yes, sir. No, I mean, we are into it. Yes, sir. Because based on your first argument. Well, the reason it's a products case and not a construction case is because the product is what caused the plaintiff's harm, not the construction. In fairness to the district court, the reason this is a challenging case is because the piece of the. . . A lot of improvements are going to be mechanical or otherwise that wind up. . . If the court looks. . . Being defective at some point. Yes, sir. If the court looks at two questions, it provides a clear answer to this question. The first question is why do states have construction statutes that are proposed? And then the second is what portion of, in this case, Bob's work caused the plaintiff's harm? I think, Judge Loken, you're getting really at the second of those two questions. And I'll give an example. Let's say that you buy a flat screen television from Best Buy. They deliver it to your house. They set it on a TV stand. Five years later, the TV explodes. Your house burns down. That's clearly a products case. But take the same hypothetical. And instead of Best Buy setting it on a TV stand, they hang it on the wall. Five years later. No, no. Let's take Brown versus this case. Okay. That's the key distinction. This guy, Bob's was not just a supplier like Overhead Door was in Brown. That's correct. That's what makes this case difficult, in fairness to the district court. Bob's supplied the product. What? That's what makes this a difficult case. Difficult. Yes, sir. I agree with that.  Because Bob's provided, they supplied the product. And they were also present on site for the assembly and installation of the product. Well, they were present on site, or did they install and assemble the product on site? They performed the assembly and installation, yes, sir. But the second question that I raised, it's not the assembly and installation that caused the plaintiff's harm. For example, Bob's, in their briefs, they go on about how they used forklifts to assemble the product, and then they bolted it to the ground. Now, if the bolting had been done in a faulty manner and the rewinder fell over on the plaintiff, then it would be a construction case. But that's not what the cause of the plaintiff's harm is. And if the court looks at every Arkansas case and every case around the country, that distinction matters. When the plaintiff is complaining about harm caused by construction work, then courts in Arkansas and all over the country say that's a construction case that statute of repose applies. But when the cause of the harm is from the product itself, then the statute of repose does not apply, and it's a products case governed by the products liability statutory framework. In this case, the decedent was killed by the product, not by the manner in which it was installed in the Bryce Corporation facility in Searcy, Arkansas. And Bob's interpretation of the statute, it would really cut the heart out of the products liability statutory framework. How would you distinguish the Cherokee carpet case with the tank that, you know, caused the injuries? Yes. In that case, that water tank was one of a kind in the world. It was individualized work. And that goes to the first question that really the court should look at to determine whether this is. . . As I understood the Cherokee carpet case, it wasn't the installation that caused the harm. It was some working of the tank at a later date. Yes, Your Honor. That was faulty. Isn't that right? The distinction there is that that tank was individualized construction and design work. Well, then your whole first argument that it can't be the basis for our decision. It's both of these questions. First, why do states have statutes of repose? And second, what was the cause of the plaintiff's harm? The first question, why do states have statute of repose, is to protect the type of work that can only be tested in years of use after the work's completion. Product suppliers don't get the benefit of that doubt because they have extensive specifications that the products have to adhere to in the design, manufacture, and assembly phase. So those can be tested and are tested in all of those phases. That distinction just . . . everybody's got rules and procedures and quality controls for what they do. Yes, sir. Whether they're installing or manufacturing or shipping or whatever. If you're a . . . The fact that a manufacturer or installer has standards and procedures internal for doing both, it doesn't matter. I contend that it does, Your Honor. Well, but I don't see that in the cases. It is in the cases because the courts, including in Arkansas, they recognize the vital distinction between a product supplier and a construction professional. In Oklahoma, the Supreme Court of Arkansas said that this was designed for the benefit of those engaged in the construction industry. So going back to my Cherokee carpet question, your point is that that was a unique tank? Yes, Your Honor. And so that would apply only if you have a custom-made product that's unique? That's not subject to quality control standards like a product that's manufactured in a facility. Why wouldn't it be subject to quality control standards just because it's unique? If you're building a house . . . Let's go to the tank. Why wouldn't that be subject to quality control standards? It's one-of-a-kind in the world, and when you're building it, you don't know whether it's going to be successful or not. It's just because of the . . . Wouldn't there still be quality control standards on how to build a tank? Yes, Your Honor. Yes. Quality control may not be the right term for it because quality control applies to products that are manufactured . . . Okay, what was your term? I was just adopting your term. Yes, Your Honor. Now, that was a local producer that designed that tank, not a worldwide supplier of a product like Bobstiz. I'm just not seeing that in the opinion as my concern. They seem to focus more on the interconnected nature of the tank there. Go ahead. That really goes to the second issue before the Court, which is whether the Rewinder is an improvement to the facility, the interconnectedness. Okay. Yes, Your Honor. Go ahead. I think you kind of answered my question. Okay. So, I'll just address that since you raised it, Judge Carlton, but whether the Rewinder is an improvement is inherently a fact question. Two federal cases have made clear that the Arkansas courts and legislature have not defined an improvement. So, it is subject to interpretation and courts generally in Arkansas and elsewhere have adopted one of two approaches to determine whether something constitutes an improvement. One is they borrow from fixtures, a fixtures analysis. And then a second is they use what they have referred to as a common sense approach. If you do the first approach with a fixtures analysis, really the only criterion that matters. But Arkansas case has taken the fixtures approach. Well. I thought they haven't. So, they haven't really done either, Your Honor. They haven't really done either. A federal court in a discovery context, not in a summary judgment or trial context, recently predicted that Arkansas would adopt the common sense approach. But the Arkansas Supreme Court has not really done either. And so, I'm making the case that either way it's a fact question that deserves for this case to be remanded for trial. On the one hand, in the fixtures approach, the intent of the parties is really the only criterion that matters. And that's inherently a fact question to be determined by a jury. Did the district court find on this particular issue on whether it was an improvement? The district court really ruled that there was no genuine issue of material fact and that the rewinder is an improvement. And our position is that that was incorrect because there's inherently a fact question as to the intent of the parties. And you argued below that that was a factual dispute that precluded summary judgment? Absolutely, Your Honor. And your intent argument is that if the rewinder ever failed and stopped working properly, the parties intended to replace it and, therefore, it's not an improvement? Well, the only way to be certain of the intent of the Bryce Corporation, which purchased the rewinder, is to hear their testimony in court. But we know from the record before the district court that, yes, this rewinder is only temporary because it was a replacement of a predecessor, and they're keeping tabs on it to know when its time will be expired so that it can be replaced by a successor. Wouldn't that be true of a lot of improvements to property, that if they wear out or if they develop a flaw, they'll be fixed or replaced? So there are other factors to look at. That's the way I read your argument. Anything that's got a useful life can't be an improvement. Well, it does depend on another point in both the Carter case and the Cherokee Mills case. Those devices that were installed, it was an elevator in the Carter case. These devices serve the property as a whole. If you shut off the elevator, you can't access the upper floors of the building. If you turned off the water pump in the Cherokee Carpet Mill, the entire facility ceases to function. In this case, the rewinder is not serving the property as a whole. It's only serving its own means, which is to produce potato chip bags. But I really want to draw the court's attention. That's a separate point that's not related to the useful life intent issue. You've switched now to whether the whole facility depends on the item. Aren't there some improvements that don't affect the entire facility? Let me draw the court's attention to an Arkansas case that's depreced, a 1947 case. In that case, the court was determining what was an improvement to real property. And there were several devices. One was a gas tank that was five feet below the ground. And there was also a water tank, water motor, and water pump, which was bolted above ground. There were pipes from both the gas tank and the water tank. What the Supreme Court of Arkansas ruled, this is 1947, but it's been cited with approval as recently as 2020. What the Supreme Court found is that the gas tank below ground and the pipes through the facility were improvements because you could not remove them without damaging the property. However, the water tank, which served the property, and the water pump, and the water motor were not improvements because they could readily be removed without damage to the realty. That's the quote from the case. In this case… Now what was that case? Was that a case about the statute of repose, or was that a fixtures case? So that was a case about a lease. And the lease used the term improvement. But the court defined the term, not defined, but found improvements in that case. But that case has been cited twice by the Supreme Court of Arkansas on cases dealing with the statute of repose on the improvement issue. So that was not a statute of repose case, but the Supreme Court of Arkansas has borrowed that analysis for statutes of repose cases, including in 1992, a 65th Center case that's cited in the brief. And you're saying the court in Dupree said the above ground… What was the rationale again for why it did not qualify? It could be readily removed without damage to the realty. The elevator in the Carter case cannot be readily removed without damage to the realty, for example. In this case, the Rewinder can be readily removed without damage to the realty. And we know that for certain because it's already happened once. And Dice Corporation is planning for it to happen again. One more point before I reserve my time for rebuttal. Back on the first question. The interpretation of the statute of repose by BOPST would really cut the heart out of the product's liability statutory framework because it would say that if you have a product that's mobile, then always the product's liability statutes apply. But if it's the exact same product using the TV, for example, if you hang it on a wall, all of a sudden it's not a product's case anymore. It becomes a construction case. There's no policy rationale to justify that distinction. This isn't a mass-manufactured piece of equipment, is it? No, Your Honor. It's a tougher case because it's not a TV that's either placed on the ground or hung on the wall. The point there is if you have a product, it's governed by a product's laws, whether it's mobile or it's bolted to the ground of a facility. You've conceded that Brown didn't destroy product's liability. It just requires a distinction that's difficult. Again, the question is what? And this is district court applied the Brown's test for this.  And, again, the question is what portion of the law? That doesn't destroy product's liability law. It does in the sense that, again, it goes to what portion of the work caused the harm. If it was the installation, then Bobst has an argument. But it wasn't the installation. It didn't fall over from negligent bolting to the floor. It was the product itself that killed the decedent. And that's why it's a product's case. It's an overhead door. As part of the product, Your Honor. Correct. It was the product. Yes. And I've only got a few seconds left, so I'll reserve my time. You may. Thank you for your argument. Thank you. Mr. Pender, we'll hear from you.  Chief Judge Colleton, may it please the Court. Tom Pender on behalf of Bobst North America. Over 50 years ago, the Arkansas Supreme Court dealt with a wrongful death case very similar to this one. And the plaintiff in that case argued that the State's statute of repose was harsh and unfair because it cut off their rights before their cause of action even arose. And the Arkansas Supreme Court enforced the statute as plainly written and said, quote, the court cannot and it should not try to make legislative policy in a case like this, close quote. What case is this? That's the Carter case, the very first case on the statute of repose. And that statute of repose has been on the books for over 60 years in Arkansas. It's been enforced by the Arkansas Supreme Court in the overwhelming number of cases that have come before it. In our case, Berne Holland was injured when he walked through the door and into this rewinder area of the plant. That rewinder area of the plant had been assembled and built by my client in 2010 so that when Mr. Holland filed this lawsuit in 2019, no cause of action existed as it relates to any deficiencies in that work. That led the district court here to conclude that BOPS North America was protected and to enter summary judgment in its favor. And the district court was correct in so ruling because of the uncontested fact record before it. Those facts included that the rewinder was delivered to Bryce in March and April of 2010 for installation. It was so large that it came in pieces. They had to use forklifts to put it in there. There had to be some planning beforehand because Bryce had to have a concrete pad foundation of sufficient strength that met certain specifications to hold this rewinder. And the BOPS technicians not only assembled the rewinder, they then affixed it to the existing lamination line which is called the L-53 lamination line. They also affixed it to the building's permanent electrical system and the air compressor system in the building. That process took BOPS technicians 10 days to complete. At the end of that process, they ran the machine through testing and commissioning with the customer, their project engineer, and their project engineer for the customer signed the acceptance documents on April 8th of 2010. That's when there was substantial completion in BOPS' work. BOPS North America is a sales and service company. The service it provides is it installs the equipment, it commissions the equipment, and if hired, it can repair the equipment. The technicians from BOPS North America, including Mr. Ruto who submitted his affidavit in support, Mr. Ruto worked originally for Rotomec and now BOPS North America. He specializes, all he does, his entire job is installing this specialized type of equipment and machinery that's used in printing press factories. He's a trained, specialized tradesperson just like electricians, just like people that do HVAC work, that do lighting work, that do trim carpentry. His specialty, BOPS North America's specialty, is the installation and interconnection of this equipment in printing. What about the argument by counsel that the injury here was caused not by what you're describing here, that is the installation, the improper installation, improper calibrating, but instead by the manufacturer of the machine? So BOPS North America is not the manufacturer of this machine, that's first, and that's not contested. Secondly, they can make that argument, but here's the problem with it. When you look at their second amended complaint, they allege repeatedly that this incident was caused by my client's improper assembly of the rewinder. You'll see that on page 191 of the joint appendix in their second amended complaint. In opposition to my motion for summary judgment, they argued the rewinder was, quote, in a manner that bypassed the loan safety feature, close quote. They're saying that the product was fine. If we had wired it according to the manufacturer's specifications, this wouldn't have happened. That's what they're arguing. For them to argue that this is a product's case when it's alleged and argued that we defectively installed it, they can't have it both ways. And, in fact, they submitted the report of an expert engineer, Peter Chen. It's in the appendix, and it was in opposition to my motion for summary judgment. And Peter Chen's conclusion, their expert's conclusion, was that my client, quote, either incorrectly wired the controls of the incident rewinder or subsequently altered the wiring of the incident machine, close quote. And that's at the joint appendix at page 947. They, the facts of this case are completely consistent with the statute of repose. And the way they pled, argued, and submitted proof in this case drove it head on into the statute of repose. And so I don't think it's persuasive for them to come before the court now and argue that, hmm, it's not an installation case. It's really about the product. On the question of whether or not BOPST is a covered party, there was also no material question of fact presented to the court on that. Again, BOPST North America is not a manufacturer of any kind. It sells, services, installs, and repairs this type of printing equipment. It would be no different if BOPST Italy had sent this rewinder down to Bryce and Bryce decided to hire a local machinery company to install it and put it together, somebody who specializes in that. That party, if that had happened, they would be covered by the statute. And it really shouldn't be any different for BOPST North America. But BOPST wouldn't. I'm sorry? But BOPST wouldn't be covered. BOPST would be covered. Even if BOPST was a middleman, if all they did was deliver to an independent local installer. If they didn't do anything that the statute says, so if they didn't design the construction, if they didn't supervise it, if they didn't plan it, if they didn't observe it, yeah, there might be a case there. But they did all of those things plus install it here. And so it's clearly, it was an obvious fact question. The court was correct in making it. But the design has to be of an improvement. The design has to be of an improvement, yes. Not of a product that's delivered for installation. Well, I don't know about that. As we've said, there are many products that are in this building, in this courtroom, that I would argue are improvements to property. The statute only says improvements to property. Well, so does the overhead door in Brown. Correct. And the court in Brown, if you read that opinion, Judge Loken, the district court in that case did not decide that the garage door opener was not an improvement. He took a pass on that issue. And instead he said, I'm going to – and he even cited a case from Texas acknowledging that there are cases out there that say a garage door opener is an improvement. But he said, I don't have to decide that because I'm going to decide it on a different issue, which is that this defendant before me simply designed and manufactured that product but never stepped foot on this construction project whatsoever. And they were a supplier of a mass-produced fungible product. That's not what we have here, and that's why Brown is distinguishable from this case. It's why this court distinguished it in the Star City case. So how would you define the line between improvement and non-improvement? What's your best crack at it? Look at the statute. The statute says improvement to property. Look at the Arkansas cases that have interpreted that statute, and they've said anything that is interconnected with the other machinery and equipment at the realty, don't concern with the manner or mode of fixation or annexation. Look at it with a view to the purpose for which the item was being held or employed. Here, this rewinder was used as an integral part of the infrastructure at this processing plant. They run that line 24 hours a day, 7 days a week, 365 days a year. And you can't get that product out of there. You can't get those rolls of potato chip bags unless at the end of those winders there's something to roll them up on into huge, giant rolls and remove them from the factory. The entire purpose of that building is to produce this product, and the rewinder is integral in that. The court talked earlier about, and I've talked about, the Carter case. I think Carter and the Cherokee Carpet Mill case are the two most similar cases here. In Carter, it's a 14-year-old boy who's killed using an elevator. It's a wrongful death suit, and the defendants in that case, there are three of them. The building architect, the contractor who builds the elevator shaft, and the third defendant is Hartenstein Elevator Company. Hartenstein Elevator Company designed, manufactured, and installed the elevator car, and the allegations were that they did so improperly. The trial court granted summary judgment to all three defendants. The Arkansas Supreme Court said all three defendants fit within the statute of repose and affirmed that, and if the court in Carter in 1970 had adopted the position of the plaintiff here that this statute only applies to architects and contractors, well, they would have granted summary judgment to that architect, which they did. They would have granted summary judgment to the contractor, which they did. But they would not have granted summary judgment to Hartenstein Elevator Company, but they did. And really, Bobst North America here, like Hartenstein Elevator Company, installed the elevator. Bobst installed the rewinder and should be covered. Five years later, in the Cherokee Carpet Mills case, once again, the statute of repose is in front of the Arkansas Supreme Court. Now it's 1975, and Arkansas has already adopted strict liability. The case involves a water tank that is built, designed and built by the defendant Manley Jail Works, but Manley did not even install that. Reading the opinion, you'll see another contractor called Westrock was actually the company that installed that water tank. But ultimately, for the Arkansas Supreme Court, it came down to the fact that, quote, the tank in question was put into position and interconnected with other parts of the machinery and equipment, close quote. That's the standard the court set. Carter and Cherokee have been on the books for over 50 years. The district court was bound to follow it, and he did. There have been generations of legislators who have come through the Arkansas General Assembly over the years, none of whom have seen fit to revoke or rescind this statute. There are other cases in the Arkansas Supreme Court that enforce the statute in cases involving roofing materials. The Elliott case involves an allegation that the defendant used inferior electrical wiring. There's a sewer pipe case where it was enforced. I would argue that electrical wiring, roofing materials, and sewer pipes are far more commonplace and mass-produced than this rewinder ever would be. And then there's this court's case in Star City Schools, where the defendant ACI provided metal roofing materials but did not install them, and the court enforced the statute of repose anyway. In Judge Wollum's opinion, he said the statute of repose in Arkansas applies, quote, to virtually anyone involved in the construction project, close quote. Our district court judge relied on that exact language, and there were no material facts left for Judge Miller to decide. All that was left was for him to apply the statute to the facts and resolve a pure question of law, which he did. Here, there are two additional reasons why it's important to affirm Judge Miller. One, if you were to adopt the appellant's argument and reverse this summary judgment, we would now have two opinions, this opinion and the Star City opinion. The district courts would be left in a state of confusion having to reconcile between those two decisions. Well, that would depend how well our opinion reads and whether we distinguish it well. You seem to think it can't be distinguished. I take that. Yeah. And the second important reason goes back to 1970 to what the Arkansas Supreme Court said in Carter, which is this court cannot and should not try to make legislative policy in a case like this. If this court were to adopt the arguments of the plaintiff here, to read into this statute some exception that is not written there, to do that, to take that step would be akin to legislating. What about, though, saying that whether something's an improvement is a fact question because it depends on the particulars of how well it's interconnected and whether it can be removed without destroying the rest of the facility and how integral it is and what the intent of the parties is. What about the argument that it's so fact intensive that it's not well suited to a determination as a matter of law? Every statute has to be interpreted on the facts. I understand that. And there can be permutations of what is an improvement and what isn't an improvement, and we can all speculate on various things that may or may not be here, though. In this case, the record was uncontested. This rewinder was interconnected with the other machinery in the plant. So when you have facts that are uncontested and lead reasonable minds to only one conclusion, then all that's left is to apply the statute to those facts, and that's what the district court said here. All right. Thank you for your argument.  Mr. Tucker, you don't have much time left, but you may give us your thought. I probably don't have time for three points, but I'm going to give it my best shot. It's not the commonality or the size of the product that matters. It's the nature of the work. Mr. Pender mentioned it's no different than wiring, what they did. The difference is an electrician doesn't know where to put a wire. He doesn't have a 146-page technical manual to say this wire goes here. Mr. Rito had a 146-page technical manual. That's product's work, not construction work. I just want to make the point, too, BOPS is not the manufacturer, but they were the retailer in Arkansas law. We're in the supply chain. It doesn't matter. Strict liability as to all. And the facts were not uncontested as to whether it's an improvement or not. For all of those reasons, my time is up, Your Honors. I respectfully request that you reverse the decision. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counsel are excused.